Filed 10/28/24  P. v. Cedillo CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ANA ALICIA CEDILLO,<br><br>    Defendant and Appellant. | E082972<br><br>(Super. Ct. No. INF060125)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County.  John D. Molloy, Judge.  Affirmed.

Marta I. Stanton, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, James M. Toohey, and A. Natasha Cortina, Deputy Attorneys General, for Plaintiff and Respondent.

1

# I.

## INTRODUCTION

Defendant and appellant Ana Alicia Cedillo appeals the trial court's order denying her Penal Code[1] section 1172.6 (formerly § 1170.95) petition to recall her second degree murder (§ 187, subd. (a)) conviction and for resentencing.  On appeal, defendant contends the trial court violated her statutory and constitutional rights by summarily denying her section 1172.6 petition at the prima facie stage because the People failed to submit any briefing to refute her allegations, the court failed to take her assertions in her petition as true, the court failed to explain its reasoning in denying the petition, and the failed to examine her record of conviction before denying the petition.  Although the trial court procedurally erred, we find the error to be harmless and affirm the order.

---

[1]  Unless otherwise specified, all future statutory references are to the Penal Code.  Effective June 30, 2022, the Legislature renumbered section 1170.95 as section 1172.6 (Stats. 2022, ch. 58, § 10), without substantive changes to the statute's content.  We hereafter cite to section 1172.6 for ease of reference.

II.

FACTUAL AND PROCEDURAL BACKGROUND[2]

A. *Factual background*

In the early morning on September 28, 2007, defendant found her 18-month-old

son, Oscar Jr. (baby Oscar, to distinguish him from his father Oscar, Sr.), lying on the

floor next to the bed where defendant had put him the previous evening to sleep with two

of his sisters.[3] Defendant noticed something brownish on baby Oscar's face, so she

picked him up and washed his face in order to wake him up. When baby Oscar did not

wake up, defendant called her mother who told defendant to call the paramedics. Fifteen

minutes elapsed between the time defendant found baby Oscar on the floor in the

bedroom and the time she called the paramedics. (*Cedillo I*, *supra*, E052598.)

When the paramedics arrived, defendant was waiting outside, holding baby Oscar.

The paramedics took the infant to a local hospital emergency room where he was

pronounced dead on arrival. Dr. Mark McCormick, the forensic pathologist who

---

[2] We provide only the facts and procedural history relevant to our resolution of
this appeal. Because the record here does not contain a complete transcript of
defendant's trial, we grant the People's request to take judicial notice of defendant's
record of conviction from her direct appeal, case No. E052598, as well as our prior
nonpublished opinion. (See *People v. Cedillo* (June 8, 2012, E052598) (*Cedillo I*); Evid.
Code, § 452, subd. (d)(1) [permitting judicial notice of "[r]ecords of . . . any court of this
state"].) The factual background, which was limited to the murder charge, is taken
verbatim from our nonpublished opinion from defendant's direct appeal solely for
background information.

[3] Baby Oscar was the youngest of defendant's six children. (*Cedillo I*, *supra*,
E052598.)

3

conducted the autopsy, determined baby Oscar died as the result of "peritonitis due to ruptured duodenum, due to blunt impact to the abdomen." Dr. McCormick expressed the opinion that to rupture baby Oscar's duodenum, the impact to the infant's abdomen had to have been severe, such as that resulting from a significant blow, stomp, or kick that most likely was administered by an adult. In Dr. McCormick's opinion, baby Oscar suffered blunt force trauma between mere hours and a couple days before his death. Dr. McCormick also expressed the opinion that as a result of the ruptured intestine, baby Oscar would have been in constant pain, and the pain would have been significant, severe. In addition, he would expect symptoms such as loss of appetite, fever, diarrhea, nausea, and vomiting in the hours or days leading up to the infant's death.[4] (*Cedillo I*, *supra*, E052598.)

Various witnesses testified at trial that baby Oscar looked sick in the days before his death, and the witnesses in question each had advised defendant to take him to a doctor. Those witnesses included Ana Vasquez, who took care of baby Oscar and two of defendant's other children for about 30 minutes on September 26, 2007, while defendant ran an errand. Vasquez testified in pertinent part that baby Oscar, whom she had taken care of at least 100 times since his birth, seemed ill and did not play with the other

---

[4] According to Dr. McCormick, baby Oscar was in the fifth percentile in weight and height for his age, most likely the result of poor nutrition. He also had two rib fractures that were in the process of healing, which suggested they were broken 10 to 20 days prior to baby Oscar's death. In addition, Dr. McCormick noted bruises on the infant's torso and head, some of which had occurred within hours of baby Oscar's death, and others of which reflected older injuries. (*Cedillo I*, *supra*, E052598.)

4

children. Vasquez testified that when defendant left him at her house, baby Oscar had a bruise on his forehead, another scratch on his chin, and a bruise on his left leg. Vasquez testified that baby Oscar did not move around like he usually did when she babysat him in the past. Instead, he just sat in one place. His forehead also felt a little hot. When defendant came to pick up the children, Vasquez told her to take baby Oscar to the doctor. Defendant told Vasquez she was afraid to take the child to a doctor because the government might take him away from her.[5] (*Cedillo I*, *supra*, E052598.)

Defendant's daughter A. testified, in pertinent part, that baby Oscar seemed sick and sad the week before his death. He cried when she carried him and "kept lunging over to grab his stomach." Baby Oscar also had diarrhea, and he was throwing up every day. On the night of his death, baby Oscar seemed very sick so A. asked defendant to take the baby to a doctor. Baby Oscar's father, Oscar, Sr., also told defendant to take the baby to the hospital. (*Cedillo I*, *supra*, E052598.)

When interviewed by various police officers during the investigation of baby Oscar's death, defendant initially denied that baby Oscar had been ill in the days before he died. She also initially denied hitting baby Oscar or any of her children. Eventually, defendant acknowledged that she spanked baby Oscar two or three times a week. Ultimately, defendant admitted that she had spanked or hit baby Oscar on either the

---

[5] In 2006, child protective services (CPS) removed defendant's children from her custody for six months as a result of an investigation that was initiated after defendant failed to obtain medical treatment for one of her daughters, who had suffered third degrees burns on her feet from accidentally walking barefoot over hot charcoal. (*Cedillo I*, *supra*, E052598.)

5

Tuesday or the Wednesday before he died. Defendant demonstrated on a CPR mannequin how she had picked baby Oscar up by one arm and spanked him two or three times on the buttocks. When asked if it was possible that defendant had hit baby Oscar on the back and that he could have sustained his injury that way, defendant said, "It was possible." Defendant also admitted she knew baby Oscar had been sick before he died and that he vomited the night before his death, but she had not taken him to the doctor because she was afraid CPS would take the kids away. (*Cedillo I*, *supra*, E052598.)

B. *Procedural Background*

On June 3, 2010, a jury convicted defendant of second degree murder (§ 187, subd. (a); count 1), attempted assault upon a child under eight resulting in death (§§ 664/273ab; count 2), and misdemeanor child abuse (§ 273a, subd. (a); count 3). The jury also found defendant guilty of misdemeanor child abuse of her three-year-old daughter (§ 273a, subd. (a); count 4.) The trial court sentenced defendant to serve an indeterminate term of 15 years to life in state prison.

Defendant subsequently appealed. In pertinent part, defendant argued the evidence was insufficient to support the second degree murder conviction because it did not establish that she acted with implied malice. (*Cedillo I*, *supra*, E052598.) We rejected this argument and affirmed the judgment on June 8, 2012. (*Cedillo I*, *supra*, E052598.)

On December 4, 2023, defendant, representing herself, filed a petition for resentencing under section 1172.6. In the petition, she alleged that an information was

filed against her that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine, or another theory under which malice is imputed; that she was convicted of second degree murder following a trial; and that she could not presently be convicted of second degree murder because of changes made to sections 188 and 189.

The trial court appointed counsel to represent defendant and set the matter for a hearing. The prima facie hearing was held on January 5, 2024, without further briefing. At the hearing, the prosecutor argued the petition should be denied, explaining defendant was ineligible as a matter of law as follows: "Your Honor, in this matter I examined the materials accessible to me at that time in Judicial Access. This is an implied malice second-degree murder from 2010; also with a 273A(b). There were no co-defendants charged. There were no instructions regarding aiding and abetting, natural and probable consequences, felony murder, conspiracy, or any other theory by which malice could be imputed to the defendant. And I sent these instructions to [defense counsel] along with a copy of the opinion on January the 2nd." Defendant's counsel agreed with the prosecutor's representations, stating that he had "confirmed what [the prosecutor] said," and submitted. The trial court thereafter denied defendant's petition. Defendant timely appealed.

DISCUSSION

Defendant argues the trial court violated her statutory and constitutional rights by denying her section 1172.6 petition for resentencing at the prima facie stage because the People failed to submit any briefing to refute her allegations, the court failed to take her assertions in her petition as true, the court improperly relied on the People's oral representations, the court failed to independently consider her record of conviction, and the court failed to explain its reasoning in denying the petition.

A. *Standard of Review*

We review de novo whether the trial court conducted a proper inquiry as to whether a prima facie case for relief had been established under section 1172.6. (*People v. Harrison* (2021) 73 Cal.App.5th 429, 437; *People v. Coley* (2022) 77 Cal.App.5th 539, 545.) Likewise, "[w]e review the interpretation of a statute de novo." (*People v. Gonzalez* (2023) 87 Cal.App.5th 869, 880.)

B. *Legal Background*

Senate Bill No. 1437 limited accomplice liability under the felony-murder rule and eliminated the natural and probable consequences doctrine as it relates to murder to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life. (*People v. Gentile* (2020) 10 Cal.5th 830, 842-843; *People v. Lewis* (2021) 11 Cal.5th 952, 957, 971 (*Lewis*).) Senate Bill No. 1437

did this by amending section 188, which defines malice, and section 189, which defines the degrees of murder and limits the circumstances under which a person may be convicted of felony murder. (Stats. 2018, ch. 1015, §§ 2, 3.)

Senate Bill No. 1437 also added what is now section 1172.6. (Stats. 2018, ch. 1015, § 4; Stats. 2022, ch. 58, § 10; see § 1172.6, subd. (a); *Lewis*, *supra*, 11 Cal.5th at p. 959; *People v. Strong* (2022) 13 Cal.5th 698, 708.) Effective January 1, 2022, Senate Bill No. 775 (2021-2022 Reg. Sess.) amended section 1172.6 to expand those eligible for relief to, among others, persons convicted of attempted murder based on the natural and probable consequences doctrine. (Stats. 2021, ch. 551, § 1, subd. (a); see § 1172.6, subd. (a); *People v. Hurtado* (2023) 89 Cal.App.5th 887, 891 (*Hurtado*); *People v. Coley*, *supra*, 77 Cal.App.5th at p. 548.) Under section 1172.6, "person[s] convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, attempted murder under the natural and probable consequences doctrine, or manslaughter," may file a petition to have that conviction vacated under certain circumstances. (§ 1172.6, subd. (a).)

If a section 1172.6 petition contains all the required information, including "[a] declaration by the petitioner that the petitioner is eligible for relief" (§ 1172.6, subd. (b)(1)(A), the trial court must appoint counsel, if requested (§ 1172.6, subd. (b)(3)). After service of the petition, the prosecutor shall file and serve a response. The petitioner may file and serve a reply after the response is served. (§ 1172.6, subd. (c).) After

9

receiving a petition containing the required information, "the court must evaluate the petition 'to determine whether the petitioner has made a prima facie case for relief.'" (*People v. Strong*, *supra*, 13 Cal.5th at p. 708, citing § 1172.6, subd. (c).) If the defendant makes a prima facie showing of entitlement to relief, the court must issue an order to show cause and hold an evidentiary hearing. (§ 1172.6, subds. (c), (d)(3).) "If the court declines to make an order to show cause, it shall provide a statement fully setting forth its reasons for doing so." (§ 1172.6, subd. (c).) The bar for this prima facie showing was "'intentionally and correctly set very low.'" (*Lewis*, *supra*, 11 Cal.5th at p. 972.) If the petitioner makes a prima facie showing he or she is eligible for relief under section 1172.6, the court shall hold an evidentiary hearing. (§ 1172.6, subds. (c), (d)(1).) At this hearing, either party may present new evidence and the prosecution bears the burden of proving the petitioner could still be convicted beyond a reasonable doubt. (§ 1172.6, subd. (d)(3).)

However, a trial court's failure to comply with these statutory requirements is harmless if the record of conviction establishes that a defendant is ineligible for section 1172.6 relief as a matter of law. (See *Lewis*, *supra*, 11 Cal.5th at p. 973.) Our Supreme Court has held that a trial court's statutory omissions at the first step process under section 1172.6 are not state or federal constitutional violations. (*Lewis*, *supra*, at p. 973; see *Hurtado*, *supra*, 89 Cal.App.5th at p. 893.) Hence, a trial court's failure to follow the procedures enacted in section 1172.6 is analyzed for prejudice under the state law standard of *People v. Watson* (1956) 46 Cal.2d 818, 836. (*Lewis*, *supra*, at pp. 973-974.)

"A petitioner is ineligible for resentencing as a matter of law if the record of conviction conclusively establishes, with no factfinding, weighing of evidence, or credibility determinations, that (1) the petitioner was the actual killer, or (2) the petitioner was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree, (3) the petitioner was a major participant in the underlying felony and acted with reckless indifference to human life, or (4) the petitioner acted with malice aforethought that was not imputed based solely on participation in a crime." (*People v. Lopez* (2022) 78 Cal.App.5th 1, 14.)  The record of conviction includes the trial court's own documents, jury summations, jury instructions, verdict forms, and prior appellate opinions.  (*Lewis*, *supra*, 11 Cal.5th at pp. 971-972.)  If the record contains facts refuting the allegations in the petition, the court may make a credibility determination adverse to the petitioner.  (*Id*. at p. 971.)

C.  *Analysis*

We agree with defendant that the trial court failed to properly comply with the statutory requirements under section 1172.6.  Notwithstanding the trial court's failure, we find the error harmless.  Even if the court complied with the statutory requirements, there is no reasonable possibility that the court would have issued an order to show cause because defendant was ineligible for relief as a matter of law.  (*Lewis*, *supra*, 11 Cal.5th at p. 971; see *Hurtado*, *supra*, 89 Cal.App.5th at p. 893.)

11

Here, defendant cannot show a reasonable probability she would have achieved a more favorable result had the trial court appointed counsel. The record of conviction conclusively demonstrates that defendant was convicted of second degree implied malice murder as the actual killer and not based on any theory of imputed malice. Defendant was the only person charged with the murder of baby Oscar, and the information did not specify a particular theory of murder. The jury instructions and verdict demonstrated she was the actual killer and acted with malice aforethought. Defendant was the sole perpetrator of the crime and there was no evidence, argument, or instruction that would suggest another individual's involvement. Generally, this finding is sufficient to find a petitioner ineligible for relief under section 1172.6 as a matter of law. (See *People v. Delgadillo* (2022) 14 Cal.5th 216, 230 [finding petitioner was ineligible for relief as a matter of law because the record established he was the actual killer and sole perpetrator of the crime].)

At her trial, the jury was instructed that defendant could not be found guilty of murder absent proof that she killed the baby "with malice aforethought." Specifically, the jury was instructed that the People must prove "defendant committed an act that caused the death of another person" and "[w]hen the defendant acted, she had a state of mind called malice aforethought." The jury was also informed that "[t]here are two kinds of malice aforethought, express malice and implied malice" and that "[p]roof of either is sufficient to establish the state of mind required for murder." The jury was also instructed with the instruction defining malice aforethought to include both express and

12

implied malice and providing a definition for each.[6] The jury was instructed on second degree murder, which incorporated the definitions of express and implied malice.[7]

Critically, the jury was not instructed on the felony murder rule, the natural and probable consequences doctrine, aider and abettor liability, accomplice liability, conspiracy, or any theory that permitted the jury to impute malice to defendant based on her participation in a crime. The jury instructions establish that defendant could not have been found guilty of second degree murder unless the jury determined that she acted with actual or implied malice. Defendant has not identified any alternative theory that was presented to the jury which would have resulted in a conviction for second degree murder

---

[6] As given at defendant's trial, this instruction provided, in pertinent, part: "The defendant acted with express malice if she unlawfully intended to kill. [¶] The defendant acted with implied malice if: [¶] 1. She intentionally committed an act; [¶] 2. The natural and probable consequences of the act were dangerous to human life; [¶] 3. At the time she acted, she knew her act was dangerous to human life; [¶] AND [¶] 4. She deliberately acted with conscious disregard for human life. [¶] Malice aforethought does not require hatred or ill will toward the victim. It is a mental state that must be formed before the act that causes death is committed. It does not require deliberation or the passage of any particular period of time."

[7] The jury was further instructed that "An act causes death if the death is the direct, natural, and probable consequence of the act and the death would not have happened without the act. A natural and probable consequence is one that a reasonable person would know is likely to happen if nothing unusual intervenes. In deciding whether a consequence is natural and probable, consider all of the circumstances established by the evidence. [¶] There may be more than one cause of death. An act causes death only if it is a substantial factor in causing the death. A substantial factor is more than a trivial or remote factor. However, it does not need to be the only factor that causes the death. [¶] If you conclude that the defendant owed a duty to Oscar Cedillo, and the defendant failed to perform that duty, her failure to act is the same as doing a negligent or injurious act."

13

based on a theory of imputed malice. (*People v. Gonzalez* (2021) 12 Cal.5th 367, 409-410 [it is the appellant's burden to affirmatively demonstrate error].)

Defendant does not qualify for relief under the unambiguous terms of section 1172.6. It is undisputed that defendant was not convicted of second degree murder based on felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to her based solely on her participation in a crime, but rather as the actual killer of baby Oscar. In finding defendant guilty of second degree murder, the jury necessarily determined defendant acted with the intent to kill. The jury's findings that defendant had the intent to kill as evidenced by the jury instructions and its verdict refute the allegations in the petition for resentencing and demonstrate defendant was not eligible for relief as a matter of law. (*Lewis*, *supra*, 11 Cal.5th at p. 971; *People v. Soto* (2020) 51 Cal.App.5th 1043, 1055.)

"'"[I]f the record . . . 'contain[s] facts refuting the allegations made in the petition,' then 'the court is justified in making a credibility determination adverse to the petitioner.'"' [Citation.]" (*Hurtado*, *supra*, 89 Cal.App.5th at p. 893, quoting *Lewis*, *supra*, 11 Cal.5th at p. 971.) Hence, as the actual killer, defendant is "'ineligible for relief' as 'a matter of law,' and 'there is no reasonable probability [defendant] would have obtained a more favorable result if'" the trial court had conducted an evidentiary hearing or properly followed the procedures outlined in section 1172.6; "consequently, the trial court's errors were 'harmless.'" (*Hurtado*, *supra*, at p. 893, italics omitted, quoting *People v. Mancilla* (2021) 67 Cal.App.5th 854, 864.) We reject defendant's

14

claim that her due process rights were violated when the trial court failed to follow the procedures outlined in section 1172.6 by denying her petition without responsive pleadings, without fully examining defendant's entire record of conviction, and without fully explaining its reasonings for denying her petition. Even if the trial court had reviewed briefing from the parties or the underlying record and fully explained its reasoning, there is no reasonable probability that an order to show cause would have been issued because the record of conviction conclusively demonstrates that defendant is ineligible for relief as a matter of law.[8]

## IV.

## DISPOSITION

The trial court's order denying defendant's section 1172.6 petition is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
Acting P. J.

We concur:

FIELDS
J.

RAPHAEL
J.

---

[8] However, we remind trial courts to adhere to the procedures articulated in section 1172.6 and *Lewis*.